[No. 9821. Department One.—September 25, 1885.]

## A. BULLARD, RESPONDENT, v. CHARLES STONE, APPELLANT.

CONTRACT FOR THE SALE OF PERSONAL PROPERTY—BREACH OF BY SELLER—MEASURE OF DAMAGES.—The measure of damages in an action by the buyer against the seller to recover for the breach of a contract for the sale and delivery of personal property is prescribed by sections 3308 and 3354 of the Civil Code.

ID.—MONEY PAID TO THIRD PERSON.—In such an action, money paid by the plaintiff to a third person, in pursuance of the contract, may be recovered from the defendant.

NEW TRIAL—INCOMPETENT EVIDENCE.—The admission of incompetent evidence, if not objected to at the trial, cannot be assigned as error on a motion for a new trial.

INSTRUCTION NEED NOT BE REPEATED.—The refusal to give an instruction which has already been given in substance is not error.

APPEAL from a judgment of the Superior Court of Tehama County, and from an order refusing a new trial.

The facts are stated in the opinion.

*John F. Ellison,* and *Hart & White,* for Appellant.

The measure of damages in this action is the excess of the value of the property to the buyer over the amount which would have been due the seller under the contract if it had been fulfilled. (Civ. Code, § 3308.) The value to the purchaser is the market value, and in determining that value, evidence as to the price for which plaintiff thought he could have purchased similar wheat in the neighborhood was inadmissible. (*Dana* v. *Fiedler,* 2 Kern. 41; 62 Am. Dec. 130; *Tobin* v. *Post,* 3 Cal. 373; *Crosby* v. *Watkins,* 12 Cal. 85; *Hillebrant* v. *Brewer,* 6 Tex. 45; 55 Am. Dec. 757; *Dey* v. *Dox,* 9 Wend. 129; 24 Am. Dec. 137.)

*F. C. Lusk,* for Respondent.

SEARLS, C.—This action is brought to recover damages for violation of a contract to sell and deliver a quantity of wheat. Cause tried by a jury. Verdict and judgment in favor of plaintiff for $2,000. A motion for new trial was made and denied. The appeal is from the judgment and from an order denying a new trial.

On or about the 5th of December, 1882, the defendant entered into a contract with plaintiff for the sale and delivery by the former to the latter of 7,976 sacks of wheat, aggregating 1,097,161 pounds.

At the date of the contract 4,400 sacks, containing 602,800 pounds, were at Squaw Hill. A further quantity of 1,045 sacks, containing 148,390 pounds, and constituting a separate lot of wheat, was also at Squaw Hill. One thousand two hundred and forty-six sacks, containing 167,490 pounds, were at Willows, and the remainder, consisting of 1,285 sacks, containing 178,481 pounds, at McIntosh Landing, all of which places are in Colusa County.

The wheat was to be paid for on delivery at the rate of $1.47½ per hundred for the two lots at Squaw Hill and at the rate of $1.50 per hundred for the residue. The wheat at Willows and the smaller lot of 1,045 sacks at Squaw Hill were delivered to plaintiff and paid for by him. The wheat was in warehouses, and two receipts had been issued therefor, one of which was held

by a bank and the other by one H. Kraft. At the date of the contract plaintiff received an order for these warehouse receipts from defendant. It was agreed that plaintiff should pay all warehouse charges on the grain and deduct the amount so paid from the purchase price.

He paid $200 on this account, and also expended $175.71 in necessary repairs to sacks and in resacking some of the grain preparatory to shipment.

The attack of appellant upon the verdict of the jury is two-fold: *First,* he contends that the evidence failed to establish the necessary facts upon which to predicate a proper verdict for damages in such a case; and *second,* that conceding the propriety of the verdict for some amount, it should not have exceeded $1,575.

Section 3308 of the Civil Code is applicable to this case, and is as follows:—

"The detriment caused by the breach of a seller's agreement to deliver personal property, the price of which has not been fully paid in advance, is deemed to be the excess, if any, of the value of the property to the buyer over the amount which would have been due to the seller under the contract, if it had been fulfilled."

What is meant by the excess of the value of the property to the buyer is defined by section 3354 of the Civil Code, as follows: "The value of property to a buyer or owner thereof, deprived of its possession, is deemed to be the price at which he might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession, and at such time after the breach of duty upon which his right to damages is founded, as would suffice with reasonable diligence for him to make such a purchase."

The rules as formulated by these sections of the Code are not materially different from those understood to have existed prior thereto.

The market value of merchandise was said to be the measure of damages in cases of refusal to deliver upon contract where payment had been made, and where payment had not been made the excess of the market value over the price agreed to be paid was deemed the measure of damages.

By the market value was meant the price or sum for which an equivalent could be reasonably and fairly purchased at or near the place where the property should have been delivered, and within a reasonable time after refusal to deliver.

The testimony as to value of wheat was furnished by plaintiff and C. B. Hobart, both grain buyers at the very points where the wheat in question was to have been delivered. Plaintiff after stating that for fourteen years he had been a grain buyer, and explaining as to the grade of the wheat in question, proceeds to say: "On December 8, 1882, I do not think I could have bought an equivalent lot of wheat for less than $1.85 to deliver it at San Francisco, which would leave it $1.68¾ at Squaw Hill, or $1.70 at McIntosh's, or $1.72½ at Willows; after I was refused that wheat on the 7th and 8th, if I had started out using reasonable diligence as a grain buyer would in the market or markets nearest this place, Squaw Hill, in that market or markets nearest to it, I don't think I could have bought an equivalent lot of wheat—by equivalent I mean equivalent in quantity and quality—for less than $1.85 per cental delivered at San Francisco, or that is $1.68¾ at Squaw Hill, and $1.70 at McIntosh's."

The witness Hobart testified to much the same effect, giving the prices at Squaw Hill and the markets nearest it, and also at San Francisco, and later in his testimony explained that "it was worth from $1.80 to $1.85 in San Francisco; and after deducting freights that would make it worth $1.67 to $1.67¼ at Squaw Hill."

We need not expect nor is it essential that witnesses testifying should clothe their ideas in those precise terms usually employed in pleading. They are expected to state such facts as are within their knowledge in their accustomed forms of expression, and from the language used, the idea is gained.

When the witnesses Hobart and Bullard stated *they did not think* wheat at a given point could be bought for less than a given price, and at the same time showed themselves informed as to the price, it was perfectly natural and proper for the jury to infer that the sum mentioned was the price, as well as the lowest price at which it could be purchased.

So, too, when they stated the market value of the commodity in San Francisco, the freight from the place of contract to San

Francisco, and that the price therefor at the place of contract was as stated, and being the San Francisco price less the freight, a jury would very naturally conclude that the San Francisco market regulated the price or market value of the article in the interior, and that at the latter point the market value was the price of the article at the former, less the cost of shipment to the central market.

These forms of expression may not always convey the exact information from which to infer the fact to be determined, but they will usually be found sufficient, and in the absence of other factors, which, if wanting, it is the province of a cross-examination to develop, will be deemed sufficient.

Our language as a vehicle to convey ideas is not in all respects perfect. Witnesses are not always logicians or elocutionists, but we may ordinarily rely upon their capacity to make themselves understood, and that being comprehended, the practical good sense of the jury-box will usually result in correct conclusions from their utterances.

We see no error in the basis assumed for determining the damages, or in the agency through which a result was reached, or in the result itself.

It is further urged that conceding the validity of the verdict to the extent of $1,575, it cannot be sustained as to the residue.

The complaint claimed that $200 was paid by plaintiff on account of the purchase price of the wheat, and that he incurred an expenditure of $175.71 for sacks and in resacking the wheat not delivered.

The evidence tended to show that the sum of $200 was paid not to defendant, but to one of the warehousemen on account of storage of the wheat, that it was paid in pursuance of the contract, which provided the plaintiff should pay storage and deduct the amount thereof from the purchase money.

It also appeared that the charges for storage were subsequent to suit brought, paid by the party who received the wheat, and that the warehouseman still holds the $200 paid him by plaintiff. This sum of money having been paid by plaintiff under the contract, and in obedience to its requirements, he is clearly entitled to recover it from defendant.

It was not paid under a mistake of fact. The warehouseman was entitled to his storage. Plaintiff was bound by his agree-

ment to pay it, and did pay this amount. There was nothing voluntary about it, and plaintiff was not entitled before suit brought to recover it back from the warehouseman, and the contract having been broken by defendant, he became liable for this sum paid on account thereof.

As to the item of $175.71, the evidence tended to show that this sum was necessarily expended by plaintiff in preparing the wheat not delivered for shipment. As the wheat was never delivered to plaintiff, this item, if objected to at the proper time, would doubtless have been excluded, but no objection was raised, so far as we can see, to it until a motion for a new trial. The complaint contained an allegation of this expenditure. It might have been stricken out on motion, as forming no proper basis for special damages in a case where the property had never been delivered to plaintiff, and in which he consequently had no right to expend money upon it. Again, the testimony might have been objected to at the trial and ruled out, or a refusal so to do assigned as error. No such motion or objection was made.

A party cannot be permitted, under such circumstances, and after tacitly consenting to the introduction of testimony, to assign its admission as error.

The instructions given by the court, at request of plaintiff, stated the law correctly as applicable to the case.

Defendant's instructions, with a single exception, were erroneous and did not properly state the law as applicable to the testimony.

The last instruction, though subject to some verbal criticism, was in the main correct, and might with propriety have been given, but having already been given to the jury in ampler form, and free from all objection, we are of opinion defendant sustained no injury by its refusal.

Upon the whole case as presented we are of opinion the judgment of the court below and the order denying the motion for a new trial should be affirmed.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT. — For the reasons given in the foregoing opinion the judgment and order are affirmed.

Hearing in Bank denied.