[S. F. No. 5847.    In Bank.—May 31, 1913.]

J. J. MOORE & COMPANY (a Corporation), Appellant, v. J. S. GUERIN & COMPANY, a Copartnership, Respondent.

SALE—CONTRACT OF CORPORATION—AUTHORITY OF PERSON EXECUTING—RECEPTION OF CONTRACT IN EVIDENCE WITHOUT OBJECTION—NEW TRIAL.—A corporation, in an action to enforce its liability as seller for the breach of a written contract for the sale of goods, which on its face purported to be executed in its name by an individual, and which was admitted in evidence at the trial without objection of any kind, and was then frequently made the subject of other evidence, cannot on a motion for new trial for the first time raise the objection of the want of evidence showing authority in the individual signing the contract to act in its behalf, or showing its ratification of the contract.

Id.—Contract Executed in Duplicate—Copy Signed by Each Party.
Where the evidence was conflicting as to whether the contract of sale was drawn in duplicate, each party respectively signing the copy given to and retained by the other, the finding of the jury that the contract was so executed will not be disturbed on appeal.

Id.—Measure of Damages—Breach by Seller—Coal Deliverable at "Ship's Side"—Coal Yards Only Open Market for Purchase.—
The measure of damages for the breach by the seller of a contract for the sale of a cargo of coal, which was deliverable at a specified place at "ship's side," is the difference between the market value of the coal in the coal yards at the place of delivery and the price agreed to be paid by the contract, without any deduction for the difference between its value at such yards and at "ship's side," if the purchaser could not have bought the coal in the open market at the place of delivery except at such coal yards.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.   George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

McClanahan & Derby, for Appellant.

John A. McGee, and R. M. Royce, for Respondent.

HENSHAW, J.—The following portion of the opinion delivered by Chipman, P. J., in the district court of appeal, is by this court adopted:

"Plaintiff brought the action to recover from defendant the value of certain coal sold and delivered by plaintiff to defendant, at the city and county of San Francisco. It was stipulated that defendant was indebted to plaintiff in the sum of $2,401.12, 'subject, however, to any offset or balance in favor of defendant, which may be proven under its cross-complaint herein.' In its cross-complaint defendant alleges that within the two years last past, at the city and county of San Francisco, 'plaintiff entered into a contract whereby plaintiff agreed to deliver to defendant and defendant agreed to take and pay therefor fifteen hundred tons of clean Stanford Richmond coal at the agreed price of eight dollars per ton at the ship's side,' said coal to be delivered upon the arrival of the steamer "Aagot" after the first day of No-

vember, 1909'; that 'said steamer arrived in this port on or about the first day of December, 1909, and defendant demanded of plaintiff the delivery of said coal, but plaintiff failed and refused and ever since has failed and refused to deliver said coal.' Wherefore defendant has been damaged in the sum of seven thousand dollars. The cross-complaint is verified and plaintiff denies specifically its averments. The cause was tried by a jury and the following verdict was returned: 'We, the jury in the above entitled cause, find a verdict in favor of the defendant in the sum of three thousand dollars ($3,000.00) which is the amount of the defendant's claim, less all sums which we find owing from the defendant to the plaintiff.' Judgment was entered on the verdict, from which and from the order denying its motion for a new trial plaintiff appeals.

"The only issue tried was that raised by the cross-complaint. Defendant offered in evidence the following document:

" 'J. S. Guerin & Company, hereafter known as buyers and J. J. Moore & Company, hereafter known as sellers,

" 'Agreement Witnesseth:

" 'That J. J. Moore & Co. agree to deliver at San Francisco fifteen hundred (1500) tons of clean Stanford Richmond coal at a price of $8.00 per ton—2240lbs.—ship's side.

" 'Said J. S. Guerin & Co. argee to haul said fifteen hundred (1500) tons from ship "Amaranth" or from steamer "Aagot" or both whilst said boats are discharging.

" '(Sgd)   J. J. Moore & Co.,

Per A. R. Phillips.

" 'Dated at San Francisco, Calif.,

" 'November 1st, 1909.' "

" 'The Court (interrupting): Is there any objection to it?

" 'Mr. McClanahan (attorney for plaintiff): No, your honor.

" 'The Court: It will be admitted then as "Defendant's Exhibit No. 1." ' "

"Plaintiff makes the point that this contract was invalid because it was not shown to have been the corporate act of plaintiff; that A. R. Phillips, who signed the name of plaintiff, was not shown to have been an officer of the corporation, nor was it shown that the contract had been ratified. The con-

tract was admitted without objection on any ground.   During the trial it was frequently the subject of the evidence; its execution by Phillips was admitted and the principal point made against its binding force was that the buyer—Guerin & Co.— did not sign it.   It is true that in the specifications of the particulars in which the evidence is insufficient to justify the verdict, appellant states that 'there is no evidence showing or tending to show that the plaintiff ever authorized or empowered A. R. Phillips to sign or execute on plaintiff's behalf the agreement set forth in defendant's Exhibit 1, or any copy thereof,' or ever ratified or approved the same.   But this objection, coming after the trial on the motion for a new trial, came too late to be available to appellant.   Had it been made during the trial defendant would have had an opportunity to supply the evidence which it was relieved from producing upon the admission of the contract without objection.   Besides, there was evidence given, during the course of the trial, in relation to the making of this contract, that Phillips was its sole agent and manager of the coal department of plaintiff's business, and had as such made sales to defendant on other occasions and had been in plaintiff's employ as such since the early part of 1909; that the contract was dictated by Phillips and was drawn in plaintiff's office and, before he signed the contract, he consulted J. J. Moore, president and business manager of the corporation and made its terms conform to Moore's directions.   There is no merit in the point now raised.

"There was evidence that the contract was drawn in duplicate; that Phillips signed the copy given defendant and defendant signed the other which was retained by Phillips. There was much evidence directed towards this fact and the evidence in relation to it was conflicting, Phillips testifying that Guerin did not sign the contract.   The jury, no doubt, accepted defendant's testimony on this point and so must we.

"It is contended that the verdict 'does not support the judgment and that the judgment should be at most for $598.88 instead of $3,000.00, if, indeed, it can be said that the verdict is sufficiently certain to support any judgment.' It is further claimed that 'if the verdict be for $3,000.00 without deduction, the evidence is insufficient to sustain the same and the amount is excessive under any view of the evidence.'

"There was evidence tending to show that the market price of coal in San Francisco between December 7, 1909, and the following April was $12.00 per ton. Plaintiff admitted that the steamer 'Aagot' arrived at San Francisco on December 7, 1909, but went to the Oakland wharf to discharge some coke and returned to San Francisco about December 11, but there was some conflict as to the date of her first arrival at San Francisco. Defendant contended that it was later than the 7th. The evidence submitted by defendant as to the market price of coal related to the price in San Francisco and was not specifically directed to the price at the 'ship's side', which was the place mentioned in the contract for delivery. Witness Burns, for defendant, who was the salesman of the Western Fuel Company, testified: 'I am familiar with the market price of coal ever since November 1, 1909. The wholesale price of coal on December 10, 1909, was $12.00. $12.00 was the price of coal on December 10th at the Western Fuel Company's place of business here in the city; that was the regular open price, $12.00 to the trade, on thirty days' time.' Defendant Guerin testified: 'I know the wholesale price of coal in San Francisco on the 10th of December, 1909. . . . All coal in the market at that time was sold for $12.00 per ton.' Witness Moore testified, and there was no other testimony on the point, that his firm 'generally made a difference' of 75 cents to $1.00 per ton between the yard price and delivery at the wharf or ship's side. The court instructed the jury as follows:

"'In the event that you find that the defendant is entitled to recover under its cross-complaint herein, the measure of damages would be the market value of the coal agreed to be delivered at the time and place agreed upon for its delivery, less the price agreed to be paid for said coal, $12,000.00. From this, you should also deduct the amount admittedly due the plaintiff, $2,401.12.' This instruction was in accordance with the law as we understand it to be."

A hearing was here granted to consider the question of the sufficiency of the evidence to sustain the award of the jury; the argument being that the evidence established that the price of coal at the ship's side was at least seventy-five cents per ton less than the price of coal in the bunkers or yards, to the ship-side price being added seventy-five cents as the

estimated cost of hauling to the yards; that, cast into figures, this would result in the following:

Market value, 1500 tons at $12.00...............$18,000.00
Contract price,  $8.00...........................  12,000.00

Difference  ..................................   6,000.00
Cost of hauling to yard, 75 cents per ton.........  1,125.00

                                                    4,875.00
Deduct plaintiff's claim......................  2,401.12

                                                 $ 2,473.88

and from these figures, it is argued, the conclusion is irresistible that the jury's verdict of three thousand dollars is excessive. With this contention, however, we cannot agree. It is true that Mr. Moore, testifying on behalf of the plaintiff, declares that in the practice of his company there is made a deduction of from seventy-five cents to a dollar per ton between the price of coal when taken at the ship's side and that taken from their yards or bunkers. He testifies, however, that he does not know whether that practice obtains with other coal concerns, and he does affirmatively declare that two companies, the Western Fuel Company, and the Pacific Coast Company, control and fix the market price of coal. The testimony is uncontradicted that the price of coal fixed by these companies was twelve dollars per ton. It is further shown that defendant could not secure the coal from the plaintiff. This being the situation, he was clearly entitled to buy the coal at the market price in the nearest market (Civ. Code, sec. 3354; *Bullard* v. *Stone,* 67 Cal. 477, [8 Pac. 17]). Such being the unquestioned law and right of defendant, the price at ship's side imports an irrelevant factor into the consideration. There was no ship's side. Defendant could not procure the coal from plaintiff's ship. He was justified, therefore, in buying in the open market, and his measure of damage is the difference between the contract price and the open market price. The evidence abundantly establishes that this difference was four dollars per ton, or six thousand dollars. Deducting from this, plaintiff's admitted claim of $2,401.12, and it leaves as the amount of defendant's damage a sum greater than that awarded by the jury.

The judgment and order appealed from are, therefore, affirmed.

Melvin, J., Angellotti, J., Shaw, J., Lorigan, J., and Sloss, J., concurred.

Rehearing denied.

Beatty, C. J., dissented from the order denying a rehearing.