[S. F. No. 9607.   In Bank.—July 13, 1922.]

## GEORGE U. HIND et al., Respondents, v. OVERSEAS AGENCIES, LTD. (a Corporation), Appellant.

[1] SALES—FAILURE TO DELIVER RICE—DAMAGES—EVIDENCE—PAYMENT OF DUTY AND DOCK CHARGES.—In an action to recover the difference between the contract price of rice which the seller refused to deliver and on which the buyers were to pay the dock charges and the tariff duty at the place of delivery and the market value of rice of like grade and quality which the buyers were compelled to purchase in the open market, the burden was upon the plaintiffs, if the substituted rice was purchased free of tariff duty and dock charges, to allege and prove the amount they would have had to pay on the original contract for such expenses in addition to the stipulated cash payment, and they were not expenses which the buyers were relieved from, through the failure of the contract, to be pleaded and proved by defendant in mitigation of damages.

[2] ID.—TERM "F. O. B."—INCLUSION OF TARIFF DUTIES—BURDEN OF PROOF.—While the supreme court must take judicial cognizance that the letters "f. o. b." in a contract of sale call for a delivery to the purchaser free of charges for transportation, loading, etc., the burden is upon the plaintiff in an action for breach of the contract by the seller to show that such charges include tariff duties, and representations made on final argument cannot be taken in proof thereof.

APPEAL from a judgment of the City and County of San Francisco. Bernard J. Flood, Judge. Reversed.

The facts are stated in the opinion of the court.

Norman A. Eisner for Appellant.

Ira S. Lillick for Respondents.

SLOANE, J.—By a contract in writing, of date May 20, 1919, the defendant agreed to sell, and plaintiffs agreed to buy, certain rice, described as "2,000 small bags No. 1 Siam Usual Rice, type S3 at $6.95 per hundred pounds gross, ex-dock San Francisco, in bond."

The defendant breached the contract June 25th by refusing to deliver the rice and thereafter, within what the jury determined was a reasonable time, the plaintiffs proceeded to purchase a like quantity and quality of rice in

the open market to take the place of the rice contracted for with defendant, and gave notice to defendant that they were about to make such purchase and would hold the defendant responsible for any loss sustained in the transaction.

This substituted rice was purchased, 50 tons, or 1000 bags of 100 pounds each, on the 27th of June, 1919, at $11 per 100 pounds gross, and 50 tons, or 1000 bags, on the 7th of July, 1919, at $10.25 per 100 pounds gross.

Plaintiffs seek to recover in this action the sum of $7,350, the alleged excess which they were compelled to pay for the substituted rice.

It is a conceded fact in the case that the terms "ex-dock" and "in bond," used in the original contract, meant that the stipulated price of $6.95 per hundred was for rice on the dock and subject to wharfage charges, and subject to tariff duty.

The cash payments to become due under this contract amounted to $13,900. What the amount of dockage and duty on the rice would be was not alleged in the complaint nor shown in evidence.

The $7,350 sued for, therefore, represents the difference between the cash items of $21,250 for the substituted rice, and $13,900, the original contract purchase price, without taking into account the liability to be assumed by plaintiffs for dock charges and duty.

The evidence, we think, is undisputed that the substituted purchase was made for rice f. o. b. San Francisco, which means free on board in San Francisco, and is claimed by defendant to be free from dock charges and duty. Assuming, for the time, that such is the proper interpretation of the evidence, the real issue presented is whether it was necessary for plaintiffs, as a condition of ascertaining their damages resulting from this breach of contract, to allege and prove the amount they would have had to pay on the original contract for duty and dock charges in addition to the stipulated cash payment.

Judgment was for plaintiff in the trial court for the full demand of $7,350 and defendant appeals.

There is no dispute between the parties as to the law of damages applicable to such a case. Respondents say in their opening brief: "We agree with appellant's counsel

that the damages in this case should be measured according to the principles laid down in sections 3308 and 3354, Civil Code, that is, the difference between the contract price, and the market value of rice of like grade and quality as the rice called for by the contract, in San Francisco, within a reasonable time after June 25, 1919.''

Where the parties differ on this branch of the case is as to whether the charges to accrue as duty and dockage were a part of the contract price to be pleaded and proved by plaintiff, or were expenses which they were relieved from, through the failure of the contract, to be pleaded and proved by defendant, in mitigation of damages.

Defendant did not itself plead these matters as an affirmative defense, but relies upon the failure of the plaintiffs to either plead or prove the necessary facts to show what the difference was between the contract price of the original purchase and the market value of the substituted rice.

It appears as conceded, that there was no rice of the quality involved to be purchased at or about the time of the breach of this contract ''ex-dock San Francisco, in bond,'' and, therefore, the plaintiffs were entitled to go into the market and substitute as nearly as they could the value of their original contract, but all they were entitled to recover in damages was enough to equalize the cost so that they would not be out of pocket by reason of having to buy elsewhere and under different conditions. They were not entitled to gain an advantage by reason of getting the substituted rice freed from liability for duty and dock charges.

For all that appears the difference in the price of this quality of rice ''ex-dock San Francisco, in bond,'' and as it was substituted, f. o. b. San Francisco, may have been largely accounted for by the saving made to plaintiffs in the substituted purchase by reason of buying free from duty and dock charges. The duty, at least, was a fixed charge which plaintiffs assumed and undertook to pay as part of the cost price under the contract.

As illustrated by appellant, if this contract had called for a stipulated cash price of $13,900, subject to lien of a chattel mortgage, and the substituted rice had been bought for $21,250, free of any lien, a measure of damage could

not have been established until there had been pleaded and proved the amount of the lien, and it had been deducted from the $21,250, to establish the difference between the contract price and the subsequent purchase.

What the plaintiffs were entitled to under their contract was rice in bond at the dock. The equivalent thing which they were entitled to substitute was rice in bond at the dock at its then market value. It is an obvious proposition that the market value of rice subject to duty and that on which the duty has been paid will not be the same.

[1] The burden is clearly upon plaintiffs to affirmatively establish the difference between the cost price of the rice under the contract, and the market value of the rice purchased as its equivalent, and the tariff duty and dock charges are a necessary element in that difference if the substituted rice was not purchased ''ex-dock'' and ''in bond.''

The case of *J. J. Moore & Co.* v. *J. S. Guerin Co.*, 165 Cal. 534 [132 Pac. 1038], cited by respondents, is not in conflict with this conclusion. In that case the contract was to deliver coal at the ship's side at $8 a ton. On the breach of the contract by seller the buyer bought in the open market from local dealers at $12 a ton, which was the market price at that time. There was no coal to be had at the ship's side, though the evidence was that when coal was so obtained it was usually sold at about 75 cents less per ton than at the yards. There was no evidence, however, that the coal was of any more value to the buyer from being purchased at the yards. If it could have been shown that by getting coal from the yards, rather than from the ship's side, the buyer made a saving in transportation, for instance, the case would be in point, but so far as appears, delivery from the yards was no less expensive than from the ship.

Quite a different situation, too, is presented in *Rosenberger* v. *Pacific Coast Ry. Co.*, 111 Cal. 313 [43 Pac. 963]. There the plaintiff sued for damages for wrongful discharge from an employment for a stated term. The measure of his damages under the recognized rule of law was his salary for the unexpired term. The burden was on the defendant to show, in mitigation of damages, that plaintiff might have obtained other employment.

In *Humphrey* v. *Farmers Union & Milling Co.*, 47 Cal. App. 211 [190 Pac. 489], the sale of the goods was f. o. b. Stockton, California. The court properly took evidence of the market value at Stockton in determining damages for failure of delivery. If the ultimate destination of the goods was Evansville, Ind., that was aside from the contract of purchase and sale, and we see no reason why the defendant could demand that the market price at Evansville should be the measure of his liability. If there were such reasons it would clearly be incumbent upon the defendant to set them up. The plaintiff's *prima facie* rights grew out of the contract of delivery f. o. b. at Stockton.

An examination of all of respondents' citations fail to disclose any authority relieving them from affirmatively showing all the elements going to measure the cost they were to incur in purchasing the rice under the contract as a necessary element in fixing their damages.

The evidence was sufficient to support the finding of the jury that there had been an unjustifiable breach of the contract by defendant, and plaintiffs were entitled to nominal damages in any event, but if the substituted rice was purchased free of duty and charges, the jury was not in a position to return the verdict it did, without knowing the amount of the duty and charges for which plaintiffs became liable under the contract.

Some discussion is had as to whether it does not appear that the substituted purchase of rice was made "ex-dock" and "in bond." This claim on the part of plaintiffs is only made in their closing supplemental brief on rehearing. The undisputed evidence was that this purchase was made f. o. b. San Francisco. As a matter of law this term carries the implication that the goods are sold free on board, but there is nothing in the record to enable the court to determine the application of the term to payment of duty and dock charges. (26 R. C. L., p. 745, and citations; *Whittaker* v. *Dunlap-Morgan Co.*, 44 Cal. App. 140 [186 Pac. 181]; *Chandler Lumber Co.* v. *Radke*, 136 Wis. 495 [22 L. R. A. (N. S.), 718, 118 N. W. 185].) Moreover, in all the preceding arguments of counsel for appellant it has been virtually conceded that the subsequent purchase was made without liability for tariff and wharfage charges. It is

repeatedly stated in plaintiffs' briefs that there was no rice in bond procurable when the second purchase was made.

Only in respondents' supplemental brief on the hearing in this court is it suggested that the record shows that the rice, admittedly purchased f. o. b. San Francisco, was actually purchased in bond. Notwithstanding the inconsistency of this position with the theory on which the case was presented in the court of appeal and in this court on the argument, if the record discloses evidence sufficient to sustain a finding that the substituted rice like that contracted for was purchased "in bond" we see no reason why such belated discovery should not be given due consideration.

Counsel for respondents apparently rely for support of this contention upon an inference which they seek to draw from the evidence showing that the rice which they contracted to buy "ex-dock" and "in bond" on May 20th, they contracted to sell to National Rice Mills "ex-dock" and "in bond" on May 23d, and that the substituted rice was bought by them "to fill their contract" with National Rice Mills. To quote their argument, they say:

"Notwithstanding the contentions of appellant the record plainly gives support to the verdict below. The contract between appellant and respondents under which the latter originally purchased the rice, provided for a sale *in bond* (Tr., p. 33). The contract between respondents and the National Rice Mills, under which this rice was resold (Tr., fols. 182, 202) is also a sale 'in bond.'"

Obviously, the contract last referred to was intended to transfer to the National Rice Company the rice contracted for by plaintiffs, under precisely the conditions under which they bought it. But the resale was made before the breach of contract by defendant, at a time when they expected to be able to turn over the original purchase to their customers. Even without the admissions made in respondents' briefs that there was no rice in bond to be had at the time of the substituted purchase, there is nothing to justify an inference that because they originally contracted for rice ex-dock and in bond, and contracted to sell on the same conditions, the rice obtained over a month later f. o. b. San Francisco, was in bond, subject to duty, even though it was bought to fill such contract. We

have no means of knowing what adjustment may have been made by plaintiffs with their customer regarding this sale, and it was perfectly competent for them to have arranged for a delivery of the rice required, free of duty.

[2] While we must take judicial cognizance that the letters f. o. b. San Francisco call for a delivery to the purchaser free of charges for transportation, loading, etc., we are not advised by anything in the record as to the facts, or any citation as to the law whether such charges to be covered by the vendor include tariff duties. It is possible that evidence as to commercial custom in such matters might disclose that such a sale f. o. b. would still be subject to duty; but the burden is upon the plaintiffs to show it, and we cannot take representations made on the final argument in proof.

As already indicated the record supports the right of plaintiffs to recover for a breach of contract. The trial court did not err in excluding contract No. 5191, relating to another and distinct transaction between the parties. The conditions arising out of that transaction could have no legitimate bearing upon the conduct of the defendant in repudiating the contract involved in this action. We find no error in the record other than as herein pointed out in relation to the measure of damages.

The judgment is reversed and the cause remanded for a new trial to determine the question of fact as to whether the purchase of the rice to replace the original purchase was made ex-dock and in bond, and if the purchase was so made, to give judgment for the plaintiffs as heretofore found by the verdict of the jury, and if made free of duty or dock charges, to ascertain the amount thereof and to reduce the amount of former judgment by the amount of such duty and dock charges.

Wilbur, J., Shaw, C. J., Lennon, J., and Lawlor, J., concurred.