[Civ. No. 2394.   Second Appellate District, Division One.—November 5, 1919.]

C. M. WHITAKER, Respondent, v. DUNLAP–MORGAN COMPANY (a Corporation), Appellant.

[1] PRINCIPAL AND AGENT—AUTHORITY TO PURCHASE MERCHANDISE— RIGHT TO MAKE INCIDENTAL TERMS.—Where the general authority of an agent to purchase merchandise exists, the right to make all incidental terms of the purchase must be implied; otherwise the authority would not be authority to purchase at all, but merely an authorization to procure offers.

[2] SALES—MEANING OF TERM "F. O. B."—The meaning of the term "f. o. b." is, that the seller is to put the goods on board at his own expense on account of the person for whom they are shipped,

and the goods are at the risk of the buyer from the time they are put on board.

[3] ID.—DELIVERY "F. O. B."—PASSING OF TITLE—PRESUMPTION.— Where the contract provides that goods are to be delivered "f. o. b." at point of shipment, the presumption that the property is to pass then is applicable.

[4] ID.—IMPLIED WARRANTY AS TO MARKETABLE CONDITION—RIGHT OF RESCISSION AFTER PASSAGE OF TITLE.—Notwithstanding that title to hay sold "f. o. b." point of shipment passes at the time the loading on the cars is completed, ·the transaction might still be subject to rescission by a showing that after inspection at the point of destination the hay is determined not to have been in a marketable condition at the time of shipment.

[5] ID.—OPPORTUNITY TO INSPECT—IMPLIED WARRANTY DOCTRINE NOT APPLICABLE.—Such doctrine of implied warranty as to the market- able condition of the hay is not applicable where not only was the delivery and passing of title complete at the point of ship- ment, but full opportunity was given for inspection at that point by the buyer and its agent, who was experienced in the matter of the handling of hay and was familiar with the hay in ques- tion, having observed it from a time while it was growing until it was loaded at the railway station.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

James W. Bell for Appellant.

J. R. Dorsey, T. M. McNamara and Rowen Irwin for Respondent.

JAMES, J.—Plaintiff, after verdict of a jury, had judg- ment for an unpaid balance alleged to be due from defend- ant on account of the sale of certain hay in the year 1915. An appeal was taken from the judgment.

The hay consisted in part of alfalfa and in part of bar- ley. It was shipped from the central part of the state to the defendant at Los Angeles, and the defendant contended that, as to the barley hay, when it was received at the lat- ter point it was "hot" and unmerchantable. The evidence

3. Passing of title by delivery f. o. b., notes, 62 L. R. A. 802; 33 L. R. A. (N. S.) 54.

offered on the part of the defendant was sufficient to establish the fact as to the condition of the hay being, upon its arrival in Los Angeles, as alleged by the defendant. The main question presented on the appeal is as to whether, under the circumstances of the case, the right to inspect the hay and reject it remained in the defendant up to the time that opportunity was had to examine the same after its arrival in the city of Los Angeles. The purchase as made covered a quantity of hay in existence at the date of the contract in the fields of the plaintiff. A portion of the hay had been already baled at the time it was bargained for, and some of the alfalfa hay had already been loaded on cars at McFarland preparatory to being shipped away to market by the plaintiff. Plaintiff had, previous to this time—May of 1915—written a letter to the defendant corporation offering to sell hay, and in response had received a letter from defendant reading as follows:

"Yours of the 15th received and will say that the writer has been out of the city is the reason same has not been answered. Regarding your barley hay, will say that Mr. Harmeling is buying for us in McFarland and we have notified him to call and give you a price for your hay. Of course, the quality counts more than anything else.

"Trusting Mr. Harmeling may be able to do some business with you, we remain,

"Yours very truly,<br>"DUNLAP–MORGAN Co."

The Mr. Harmeling referred to in the letter approached the plaintiff in his field, where he was at work hauling the hay, and made an offer to him for both the alfalfa and barley hay, the price offered being $7.50 per ton for the barley and $6.75 for the alfalfa, "on board cars, McFarland." This offer the plaintiff testified he refused, saying, "I want $8 for the barley and $7 for the alfalfa." His testimony continued: "I then had a car of alfalfa loaded and was loading another, and he says, 'Will you give me until 2 o'clock?' and I said, 'Well, you let me know in time so we can bill the hay out before freight time; that is all that is necessary.' When I was loading the second car he came to me with a telegram and handed it to me, and, as I remember, the telegram was from Dunlap-Morgan and

said, 'Buy Whitaker's hay seven and eight dollars per ton, prompt delivery.' Signed 'Dunlap-Morgan.' '' A copy of the telegram was later introduced, which showed that it was of the same substance as testified to by the plaintiff. The deal was closed, the condition of the agreement being that the price agreed upon was for the hay "f. o. b." McFarland. The alfalfa hay already loaded on cars was forthwith shipped to defendant and the shipment of the barley hay was proceeded with as fast as the same was baled, the time occupied, as we gather from the testimony, being about seven or eight days. Before all of the hay had been shipped, the defendant dispatched to the plaintiff two letters, one assuming to confirm the purchase of the alfalfa hay and the other confirming the sale of the barley hay. In these letters conditions were stated which, if given the effect of modifying the terms of purchase, would clearly have given the right to defendant to inspect the hay at Los Angeles before being bound to pay the purchase price. It will be remembered, however, that before these confirmatory letters had been dispatched not only had the negotiations been all completed between the plaintiff and the defendant's agent, Harmeling, but the shipment of the hay had been commenced and a portion of it had been received by the defendant. One of the questions suggested here is as to whether there was any limitation upon the authority of Harmeling which would entitle the defendant to consider and confirm the deal before it became operative. No such limitation of authority, we think, can be assumed under the circumstances. [1] The defendant plainly and expressly advised the plaintiff that its agent in the field was there for the purpose of buying hay, and where the general authority of an agent to purchase merchandise exists, certainly the right to make all incidental terms of the purchase must be implied; otherwise the authority would not be authority to purchase at all, but merely an authorization to procure offers. Hence we must assume that Harmeling acted within the reasonable limits of his authority in all that he did concerning the making of the purchase of the hay. The agent purchased the hay for delivery "f. o. b." McFarland. This term is one that has such a common commercial signification that the courts generally take notice of its meaning, without proof. "In many mercantile contracts it is stipulated that

the vendor shall deliver the goods 'f. o. b.,' i. e., 'free on board.' [2] The meaning of these words is, that the seller is to put the goods on board at his own expense on account of the person for whom they are shipped, and the goods are at the risk of the buyer from the time when they are put on board." (Benjamin on Sales, 7th ed., sec. 682.) [3] "If, therefore, the contract provides that goods are to be delivered f. o. b. at point of shipment, the presumption that the property is to pass then is applicable." (Williston on Sales, sec. 280.) [4] Notwithstanding that title to the hay passed at the time the loading on cars at McFarland was completed, the transaction might still have been subject to rescission by a showing that after inspection at Los Angeles the hay was determined not to have been in a marketable condition at the time of shipment. [5] This matter is referable to the proposition of there being an implied warranty, but is not applicable here because not only was the delivery complete at McFarland and the passing of title also, but full opportunity was given for inspection at that point by the defendant or its agent. The fact was shown that the agent of the defendant was very familiar with the particular hay sold by the plaintiff; that he had observed it while growing and after it was cut; had known that at some time previous to the date of the transaction a shower had wet the hay in the windrows and shocks. Furthermore, this agent had charge of the shipment of the hay and caused the bills of lading to be made out and was at different times at the railway station while the hay was being loaded. The evidence further tended to show that he was quite experienced in the matter of handling hay. By his own testimony it appears that he knew that if the hay was not properly dried before baling, it might be damaged. We are not unmindful of the fact that it was testified to by the agent that he, in a conversation with Whitaker, had been assured by Whitaker that the hay would be shipped in proper condition and dry. Whitaker disclaimed any recollection of such conversation; he stated that his recollection as to the occurrences was good. However, we do not find any issue presented by the answer as to defendant having been caused to limit its inspection of the hay at the point of delivery because of any misleading assurances received from the plaintiff. The undisputed evidence, we think, shows both

delivery and acceptance of the hay at McFarland. This legal situation having resulted, then those things thereafter occurring by which defendant sought to limit its liability are of no moment.

We do not think the court committed prejudicial error in allowing Harmeling to testify as to his understanding of the meaning of the initialed phrase "f. o. b." We do not understand that by his answer he extended that meaning beyond what is commonly understood and accepted in the commercial world and by the courts as the true signification. In our opinion, there was no implied warranty of the hay surviving the time of the delivery and acceptance at the railway station; this because the agent of the defendant had fully examined the hay, knew its particular character, was at the railway station when it was shipped, and was given every opportunity to complete any desired inspection. Under the undisputed testimony we have already concluded that Harmeling had full power to negotiate the purchase of the hay and to fix the terms thereof. We think the court might have instructed the jury directly as to the extent of that authority. We have carefully examined the instructions as given and refused, and think that the case on the whole was fairly presented to the jury.

The judgment appealed from is affirmed.

Conrey, P. J., and Shaw, J., concurred.