[Civ. No. 3189.    Third Appellate District.—November 6, 1926.]

## JAMES M. MANLEY, Respondent, v. PACIFIC MILL & TIMBER COMPANY (a Corporation), Appellant.

[1] CONTRACTS—SALE OF LUMBER — INTERPRETATION — ISSUES — INFERENCES.—Where the parties to a contract for the sale and purchase of lumber have conversations and enter into correspondence relative to some of the lumber that was stained and to a small quantity of lumber which was not of the quality and grade called for by the contract, the price of which was adjusted outside of the terms of the contract, and the interpretation to be put upon the various clauses of the contract is not questioned until after the entry of judgment for the plaintiff in an action by the seller to recover the balance due on the purchase price, the issues at the trial being as to the quantity and quality of the lumber delivered, this raises the inference that both parties had a common understanding of the meaning of the contract entered into by them, and that it meant just what the plaintiff, by the allegations of his complaint, claimed it meant.

[2] ID.—CONSTRUCTION—GIVING EFFECT TO EVERY PART. — Under section 1641 of the Civil Code, a contract is to be construed so as to give effect to every part thereof, if possible.

[3] ID.—SALE OF LUMBER—SLIDING SCALE PURCHASE PRICE—CONSTRUCTION—INTENT.—Where a contract for the sale and purchase of lumber fixes a basic price of forty-one dollars "per thousand" for lumber consisting of at least thirty per cent upper grades, and, after providing for a decrease in price "per thousand" if the upper grades go below the specified percentage, provides that "in the event that such percentage shall exceed thirty-five

---

2.  See 6 *Cal. Jur.* 259; 6 *R. C. L.* 838.

per cent of uppers" then the buyer shall pay to the seller "at the rate of four dollars per thousand for the first five per cent in excess of said thirty per cent; eight dollars per thousand for all in excess of thirty-five per cent, etc., thus allowing a leeway of at least five per cent before any change in price," and the lumber runs slightly above forty-five per cent of the upper grades, such contract is properly construed as entitling the seller to fifty-three dollars per thousand feet for all the lumber sold and delivered under such contract, and not merely to the increased payment for the percentage of uppers in excess of the guaranteed quantity of thirty per cent; but if such contract is ambiguous, and no parol evidence is introduced to show a different intention and understanding of the parties, the action of the trial court in thus construing the contract is conclusive.

[4] ID.—INTENT AND MEANING OF PARTIES—INTERPRETATION—APPEAL. If the construction given by the trial court is one which is tenable, and one which appears consistent with the true intent and meaning of the parties, it is not within the province of the appellate court to set aside the judgment of the trial court and substitute its own interpretation, simply because another interpretation thereof is also possible.

[5] ID.—DATE OF PERFORMANCE—AMOUNT DUE—INTEREST.—Where all items entering into and making up the balance due from defendant to plaintiff on the purchase price of the lumber existed, and the whole amount due was readily ascertainable, the trial court properly allowed interest upon the amount found due from the date on which performance by plaintiff was completed and payment demanded.

(1) 1 **C. J.**, p. 691, n. 96; 35 **Cyc.**, p. 98, n. 19, p. 120, n. 74. (2) 13 **C. J.**, p. 527, n. 46.   (3) 35 **Cyc.**, p. 102, n. 71.   (4) 4 **C. J.**, p. 879, n. 86; 22 **C. J.**, p. 111, n. 50.   (5) 35 **Cyc.**, p. 580, n. 31.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. T. I. Fitzpatrick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Sterling Carr, Carr & Guiler and Maurice T. Dooling, Jr., for Appellant.

B. K. Collier and Eugene P. Jones for Respondent.

5.   See 8 Cal. Jur. 794.

PLUMMER, J.—Plaintiff recovered judgment for the sum of $5,252.20, balance alleged to be due on a certain contract for the sale and purchase of lumber, together with interest thereon at the rate of 7 per cent per annum from the twentieth day of June, 1921. From this judgment the defendant appeals.

On the twenty-eighth day of April, 1920, the plaintiff, as the party of the first part, and the defendant, as the party of the second part, entered into a written contract for the sale by the plaintiff to the defendant and purchase by the defendant from the plaintiff of certain lumber to be manufactured by the plaintiff according to specifications to be thereafter furnished to the party of the first part by the party of the second part in said contract. The contract specifies the kind of lumber to be furnished, the length, width, and thickness for the sawing of said lumber, and after providing for the quality of the same, contains the following provision:

"Said party of the second part agrees to pay for such lumber at the rate of forty-one dollars per thousand, F. O. B. Gregory, Oregon, said lumber to be tallied or graded on to the car. Said party of the first part guarantees that said lumber shall consist of at least thirty per cent upper grades and the foregoing price is made on that basis. In the event that said lumber should not grade at least thirty per cent uppers or shall grade at least five per cent less that amount, then said party of the second part shall be entitled to a rebate from the said party of the first part of *four dollars per thousand for such loss;* that in the event that such percentage shall exceed thirty-five per cent of uppers then said party of the second part shall pay to said party of the first part at the rate of four dollars per thousand for the first five per cent in excess of said thirty per cent; *eight dollars per thousand for all in excess of thirty-five per cent,* etc., thus allowing a leeway of at least five per cent before any change in price."

The contract then provides that the lumber is to be paid for as follows: Immediately upon obtaining bill of lading, a sight draft, together with such bill of lading, shall be forwarded to the party of the second part, and a discount of 2 per cent allowed for cash payments.

The trial court found that the plaintiff had delivered to the defendant 372,296 feet of lumber, of which 46.12 per cent consisted of uppers, and construed the contract as fixing the

price for all the lumber delivered at $53 per thousand feet. It is here contended on the part of the appellant that such construction of the contract is erroneous, and that its true construction only admits of an increased payment for the percentage of uppers in excess of the guaranteed quantity of 30 per cent. One computation gives the total value of all the lumber delivered at $19,731.68; the other at $15,669.87. To illustrate it a little more clearly, according to the plaintiff's calculation, if the total shipment ran 35 per cent uppers, an additional compensation to be paid therefor would amount to the sum of $1,489.18, while the defendant's computation would permit an additional increase in the price of only $74.45. Again, according to the plaintiff's calculation, according to the fact found by the court, that the whole shipment of lumber ran slightly in excess of 46 per cent uppers, the additional price to be added to the tentative basic price mentioned in the contract, would be the sum of $4,467.54, while according to the appellant's construction the total purchase price would be advanced only in the sum of $405.73.

No parol testimony was introduced upon the trial relative to the construction of the contract, or of such contracts, by lumber dealers, or of what was meant by the parties entering into the same. However, it may be observed that the whole tenor of the case and theory of the trial, so far as the same can be ascertained from the transcript, would appear to be to the effect that the construction of the contract given by the trial court was within the contemplation of the parties until after judgment was finally entered herein. The complaint sets forth the quantity of lumber delivered, its quality as being in excess of 45 per cent uppers, and then the amount due thereon according to the construction of the contract given by the trial court. The answer put in issue the quantity and quality of lumber delivered, denies that it exceeded 35 per cent uppers, and based upon its allegation that the lumber did not exceed 35 per cent uppers, set forth the value of the lumber delivered. Only inferentially can it be said that any question was raised as to the construction of the contract. When we come to the testimony we find by an examination of the transcript that practically all that was submitted to the trial court involved the quality of the lumber and slight objections as to the quantity based upon

erroneous foot calculations as to the number of feet contained in certain pieces of lumber. The testimony shows that the lumber shipped by the plaintiff was delivered at certain places designated by the appellant; that some of the lumber was delivered to the Pioneer Box and Lumber Company, at Sisson, and that the Pioneer Box and Lumber Company had the cars of lumber delivered to it regraded or tallied, and that such regrading or tallying did not correspond exactly with the grading and tallying of the person who had graded and tallied the lumber under the contract at Gregory, Oregon. The testimony also shows that there was some weather-stained lumber shipped and a small quantity of lumber which did not come up to the required grade. An examination of the correspondence relating to such lumber shows that such questions were settled by discounts from the agreed price and the findings of the court show the amount thereof and credit was given to the defendant by the trial court for such amounts; also for certain items of expenditure incurred by the appellant as well as the amount of cash discount computed according to the terms of the contract. The transcript also shows that on March 2, 1921, the plaintiff submitted to the appellant a statement of the amount and quality of lumber delivered under the contract as of that date, including therein a statement of the basic price allowed under the contract based upon the quality of the lumber running above 45 per cent uppers. Some weeks after the receipt of this statement the appellant wired to the plaintiff to ship the remainder of the lumber agreed to be delivered under the contract. This shipment was made on or about the fourth day of June, 1921. This statement likewise included a calculation of the amount claimed to be due on account of the lumber running over 45 per cent uppers. The amount of increased price set forth in this statement was the sum of $4,467.55. No objection appears to have been made to this statement so far as any questions presented upon this appeal are concerned. The only testimony in the transcript relating thereto is that given by Mr. Davenport, president of the appellant, as follows:

"Q. Have you any testimony to give in reference to that first shipment? . . . A. I objected to that statement. Q. You have not fixed the time? A. Between March and this last shipment. . . . A. The principal part of the talk that I

had was about this stained lumber, talking about this stained lumber, and Mr. Manley told me he would stop off on his way home and take that matter up.  Q. In reference to the first statement, did you have any talk in reference to this first statement between March and June, 1921?  A. Yes. . . . At the time I saw Mr. Manley I don't believe that I had received his last statement.  It was only the first statement that I had received.''

[1]  The conversation referred to and the letters set out in the transcript relative, as we have said, to some of the lumber that was stained and to a small quantity of lumber which was not of the quality and grade called for by the contract, the price of which was adjusted outside of the terms of the contract, and need be considered only so far as it shows that the interpretation to be put upon the various clauses of the contract appear not to have been questioned until after the trial of this cause had been concluded.  This of itself is very persuasive in favor of the construction given the contract by the trial court, and raises the inference that both parties had a common understanding of the meaning of the contract entered into by them, and that it meant just what the plaintiff, in his statement, claimed it meant.  It is very similar in its nature to an implied assent given to an account where one person sends to another a statement setting forth the amount claimed to be due and the opposite party does not within a reasonable time make any objection thereto.  His acquiescence will be taken as an admission that the account is truly stated.  (1 Cal. Jur. 197, sec. 54.)

[2]  Section 1641 of the Civil Code requires a contract to be construed so as to give effect to every part thereof, if possible.  The same rule is set forth in 6 California Jurisprudence, page 259 et seq.

[3]  With this in view, let us examine the contract, particularly the paragraph which we have quoted in full. The contract provides for the kind of lumber to be shipped, that the grading shall be done by a person mutually agreeable to the parties to the contract, that the grading shall be done at Gregory, Oregon, that the lumber shall be placed upon the cars f. o. b., that the second party agrees to pay for the lumber at the rate of $41 per thousand, the party of the first part guaranteeing that the lumber shall grade at least 30 per cent uppers and the price of $41 per thousand is

made on that basis. It is then agreed that in the event
said lumber should not grade at least 30 per cent uppers,
or shall grade at least 5 per cent less, then said party of the
second part shall be entitled to a rebate from the party
of the first part, in the sum of $4 per thousand for such loss.
The phrase $4 per thousand for such loss, we think, should
be held to mean $4 per thousand feet for such loss, that is,
if the lumber graded 25 per cent uppers, then and in that
case, the basic price would be reduced from $41 to $37 per
thousand feet. If the appellant's contention were correct,
then and in that case, the appellant would only be entitled
to a rebate in the sum of $74.45; whereas, under the con-
struction given by the court, the amount of the rebate in
price would be something over $1,400. The contract then
sets forth that in the event such percentage shall exceed 35
per cent uppers, the party of the first part is entitled to an
advance in the price of $4 per thousand. Here again the
word "feet" is omitted, but we think means $4 per thousand
feet. Then following this agreement are the words "$8.00
per thousand feet of any excess of 35% etc., allowing a
leeway of at least 5% before any change in price appears."
The court construed this language to mean that for each 5
per cent excess in the quantity of uppers delivered there
shall be an increase in the basic price of $4 per thousand feet.
The last clause in the contract seems to indicate that such
was the intention of the parties, the abbreviation "etc." in the
clause of the contract would indicate also that the parties
had fixed a 5 per cent change in the quality of the lumber
as a standard by which there should be a change in the basic
price in the lumber purchased by the defendant from the
plaintiff. In support of this construction given to the con-
tract by the trial court and that such was the true interpre-
tation and meaning intended to be given thereto by the
parties executing the same, it appears that the plaintiff and
the defendant gave to each other a bond in the sum of $5,000
to cover any variation in price. The lumber was to be billed
by the plaintiff to the defendant at the basic price of $41
per thousand feet upon a guaranteed quality. If the quality
ran below that guaranteed the plaintiff's bond guaranteed a
refund to the defendant to the extent of at least $5,000. On
the other hand, if the quality ran above the guaranteed 30
per cent payment being made only at the rate of $41 per

thousand feet. The defendant's bond to the plaintiff insured that the plaintiff would receive additional payment up to the sum of $5,000. As we have shown, the excess in the quality of the lumber above that agreed to be delivered advanced the price above the basic price of $41 per thousand feet to $53 per thousand feet, thus making due to the plaintiff the additional sum of $4,467.54, to insure which the bond given by the defendant in favor of the plaintiff guaranteed the payment thereof. If the appellant's contention that only $405.73 is the change in the basic price of the lumber provided for in the contract, it is hardly conceivable that a bond would have been executed in the sum of $5,000 to guarantee such insignificant payment. The actions of the parties to which we have referred herein leads us to the conclusion that the trial court gave a correct interpretation of the disputed paragraph. On the other hand, if the contract is ambiguous, so that there might be two possible constructions, then we agree with the respondent that the law as set forth in 6 California Jurisprudence, 327, and also in the case of *Slama Tire Protector Co.* v. *Ritchie,* 31 Cal. App. 555 [161 Pac. 25], applies. **[4]** Hence, if the construction given by the trial court is one which is tenable, and one which appears to us consistent with the true intent and meaning of the parties, it would not lie within the province of an appellate court to set aside the judgment of the trial court and substitute its own interpretation, simply because another interpretation thereof is also possible.

We may here state that there is not a single word of testimony in the transcript showing or tending to show that the market value of the lumber agreed to be purchased from the plaintiff by the defendant was not the sum found by the trial court as the price agreed to be paid therefor in the contract involved herein. Had the wholesale price of the lumber of the quality found to have been delivered by the plaintiff to the defendant differed materially from that stipulated in the contract, interpreted as we have herein stated, then and in that case it would have been proper for the trial court to consider the same in determining the true construction to be given to the language employed by the contracting parties. There being no such testimony introduced, it is fair to conclude that no such testimony existed, and if the price for the lumber was exorbitant, as now

claimed by the appellant, it could easily have been shown and presented to the court as extrinsic evidence bearing upon the meaning of the language used by the plaintiff and the defendant. As we have heretofore stated, however, the only extrinsic evidence in the contract that tends to show the understanding of its terms and the construction given thereto by the contracting parties, is the fact that statements was rendered by the plaintiff to the defendant exhibiting a construction of the contract as given by the trial court and that no objections or exceptions were taken thereto, that the only difference which arose between the contracting parties related to the quality of an inconsiderable shipment, of which adjustment in price other than that stipulated in the contract was readily acceded to by the plaintiff. This difference related to a small quantity of red fir which was rained upon after being loaded, and came under the classification of green or wet lumber.

[5]  Objection is further urged that the trial court allowed interest upon the amount found due from the date on which performance was completed and demand for payment. Section 3287 of the Civil Code provides that every person is entitled to interest where the demand is certain or capable of being made certain by calculation. In the case at bar it was agreed that the quality and quantity of the lumber should be determined by a grader selected by both parties and paid for by them. This appears to have been done. The reports of this grader showing the quantity and character of the lumber were made coincident with the shipments. The amounts and character of the lumber were thus fixed and known to the defendant. As found by the trial court, the plaintiff during the course of the shipments of the lumber readily consented to the deductions claimed by the appellant on account of failure of certain small quantities of the lumber to come up to the grade called for in the contract. It thus appears that all the items entering into and making up the total sum due from the defendant to the plaintiff existed and the whole amount due was readily ascertainable. The cases cited by both appellant and respondent show that when these conditions exist, interest should be allowed, and when they do not exist, interest cannot be allowed prior to the entry of judgment. (*McFadden* v. *Crawford,* 39 Cal. 662; *Mix* v. *Miller,* 57 Cal. 356;

*Cox* v. *McLaughlin,* 76 Cal. 60 [9 Am. St. Rep. 164, 18 Pac. 100] ; *Easterbrook* v. *Farquharson,* 110 Cal. 311, 317 [42 Pac. 811] ; to which we may add the recent case of *California Bean Growers' Assn.* v. *Rindge Land & Navigation Co.,* 199 Cal. 168 [47 A. L. R. 904, 248 Pac. 658], decided August 2, 1926.) Our conclusion is that the judgment should be affirmed, and it is so ordered.

Hart, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 5, 1927.