[Civ. No. 1149. Fourth Appellate District.—October 23, 1935.]

W. A. SWERDFEGER, Respondent, v. UNITED ACCEPTANCE CORPORATION (a Corporation), Appellant.

Harry W. Horton for Appellant.

Glassford & Smith for Respondent.

JENNINGS, J.—The plaintiff, who is a lettuce grower in Imperial County, entered into a written agreement with the defendant on May 15, 1929, relative to the sale of lettuce which was to be grown by plaintiff during the following autumn on land leased by him. By the terms of this contract defendant agreed that it would advance to plaintiff an initial amount of $15,050 and that it would make an additional loan to plaintiff of the sum of $35 per acre. Payment of the latter advancement was to be made by defendant in instalments as the season should progress and plaintiff would require additional financing for the proper care and cultivation of the crop. The plaintiff, on his part, agreed that he would place the entire crop of lettuce to be grown by him on the land described in the contract in defendant's hands to be packed, shipped and marketed by the latter and that from the proceeds obtained from the sale of the lettuce he would repay to defendant the various amounts advanced to him together with interest thereon at the rate of 8 per cent per annum and a commission of 15 per cent of the sale price for defendant's services rendered in the packing, shipping and marketing of the lettuce. At the close of the season defendant submitted to plaintiff a statement which showed that it was indebted to plaintiff in the sum of $547.69. Attached to this statement was a check drawn payable to plaintiff's order for the aforementioned amount. The plaintiff, although he expressed dissatisfaction with the amount for which the check was drawn, cashed the same and thereafter instituted this action to recover from defendant the sum of $12,248.93. The action was tried before the court without a jury. Upon the conclusion of the trial judgment was entered in plaintiff's favor for the sum of $2,007.91. From this judgment the defendant appeals.

On this appeal the defendant attacks the allowance of three distinct items whose total is the amount specified in the judgment. The defendant further contends that the evidence established an accord and satisfaction.

The first item to which objection is made is the sum of $1537.40 which the trial court allowed as a rebate on the charge made by defendant for packing the lettuce. It is undisputed that the total number of crates of lettuce that were packed and marketed by defendant was 30,748. The court

allowed plaintiff a rebate of 5 cents per crate on the charge for packing. The rebate was allowed because the undisputed evidence showed that defendant actually paid the firm that did the work of packing at the rate of 70 cents per crate, whereas it charged plaintiff at the rate of 75 cents per crate.

Defendant's charge for packing was made in accordance with a clause of the contract between the parties which is in the following language:

"The party of the first part agrees to grade, ice, pack, and load said lettuce on board cars for the account of and at the expense of the party of the first part. It is agreed however that said charge, which includes crates complete, paper for lining crates, ice and labor shall not exceed the sum of seventy-five cents (75c) per crate, which the party of the second part agrees to pay and such charge is to be deducted from money received from sale of said lettuce."

The trial court evidently construed the above-quoted language as meaning that defendant was permitted to make a charge for the actual expense which it incurred in having the lettuce packed which was in no event to exceed 75 cents per crate and that it was not an agreement for the allowance of a fixed charge of 75 cents per crate irrespective of the actual expense incurred.

Defendant contends that the evidence showed that the price generally charged for packing lettuce during the season of 1929–30 was 75 cents per crate and that it was able to have the work performed at the rate of 70 cents per crate because it agreed to lend its credit to the packer to enable it to obtain materials required for the work. The evidence sustains defendant's contention that it was able to procure the doing of the work at the less rate by agreeing to lend its credit to the packer to render possible the purchase of necessary supplies which the packer was not financially able to obtain on its own credit. The evidence also showed, however, that the packer paid in full for all supplies that were used in the work of packing and that defendant sustained no loss because of its agreement to lend its credit to the packer.

It is our conclusion that the trial court's interpretation of the above-quoted language of the contract is not so unreasonable or so clearly inconsistent with the intent of the parties as disclosed by their language that we are required to substitute therefor the interpretation insisted upon by defendant.

In such a situation a reviewing court is not justified in disturbing the construction adopted by the trial court. (*Adams* v. *Petroleum Midway Co., Ltd.*, 205 Cal. 221 [270 Pac. 668]; *Kautz* v. *Zurich Gen. A. & L. Ins. Co.*, 212 Cal. 576, 582 [300 Pac. 34]; *Manley* v. *Pacific Mill & Timber Co.*, 79 Cal. App. 641, 648 [250 Pac. 710]; *Whepley Oil Co.* v. *Associated Oil Co.*, 6 Cal. App. (2d) 94 [44 Pac. (2d) 670].)

The second item to whose allowance defendant objects is the sum of $406.07 which the evidence disclosed consisted of commission at the rate of 15 per cent charged by defendant on expense incurred for "top icing" the lettuce that was shipped. It is not disputed that the sum of $2,758 was paid by defendant for ice that was placed on top of the crates of lettuce in the cars in which it was shipped. The evidence also indicated that the expense of "top icing" was charged to the buyers of the lettuce and that it was repaid by them to the defendant. During the trial, the defendant produced evidence which tended to show that it was the custom of lettuce shippers to "top ice" lettuce, that it was always done unless the buyer gave orders to the contrary, and that the selling price of lettuce included a separate charge for "top icing" which was collected from the buyer. Evidence was also produced which tended to prove that defendant and one other similar concern operating in Imperial County charged a commission on the expense of "top icing".

In support of its contention that a commission on the above-described expense was justified and that the trial court therefore erroneously allowed plaintiff to recover it, defendant relies on the following provision of the contract:

"The party of the first part agrees to ship and sell said packed lettuce for the account and at the risk of the party of the second part and it is mutually agreed and understood that the party of the first part is to receive from the party of the second part as commission therefor Fifteen per cent (15%) of the f. o. b. price at El Centro said commission to include brokerage, and other proper expenses incident to soliciting orders and selling said lettuce. The party of the first part agrees to use his best efforts and endeavors to sell said lettuce to the best advantage."

It is not easy to understand defendant's reliance on the above-quoted language to sustain its contention that it was entitled to charge a commission on the expense of "top icing"

the lettuce. It is there clearly stated that defendant is to receive for its services in shipping and selling the lettuce a commission of 15 per cent ''of the f. o. b. price at El Centro''. The term f. o. b. has a commercial significance which is quite generally accepted by courts without proof. It is undisputed that the letters composing the expression consist of a convenient abbreviation for the words ''free on board''. ■ The meaning of the term is that the seller is to place merchandise on board at his own expense on account of the person for whom they are shipped. (*Whitaker* v. *Dunlap-Morgan Co.*, 44 Cal. App. 140, 144 [186 Pac. 181].) The evidence produced by the defendant showed, however, that the expense of ''top icing'', although paid in the first instance by defendant, was charged to the buyer to whom the lettuce was consigned and was paid by the buyer as an item of shipping expense properly chargeable to him. Under such circumstances it could manifestly not be included within the undisputed meaning of the term, f. o. b., and the contract provision permitting the collection of a commission of 15 per cent of the f. o. b. price did not entitle defendant to charge a commission on the expense of ''top icing'' the lettuce.

■ The third item of recovery to whose allowance defendant objects is the sum of $64.44 which defendant had charged as commission on the sum of $644.47 at the rate of 10 per cent.

The evidence which was produced relating to this last-mentioned item showed that as the lettuce growing season progressed plaintiff found himself in need of additional funds whereupon he applied to defendant for a further loan and in return therefor made the following agreement on December 21, 1929:

''For and in consideration of an extra advance of $5.00 per acre on my lettuce contract No. 34, I hereby agree to pay The United Acceptance Corporation 10% of the net profits of this crop.''

The plaintiff, over defendant's objection, was permitted to show that in the growing of the lettuce he had incurred obligations for labor, mule rent, and feed to the extent of $644.47 which were not paid by him until after the final statement was rendered by defendant and which were not deducted by defendant as costs from the gross profits derived from the sale of the lettuce although the various items of expense were

called to defendant's attention and the final statement was returned to defendant for correction.

It is apparently defendant's contention with respect to this particular charge that the various items of expense incurred by plaintiff in the growing of the lettuce and which had not been paid by defendant or from the various advances made by defendant prior to the rendition of the final statement may not be considered in arriving at "net profits". It is urged that "net profit" could only be discovered by an examination of the various expenditures and advances covered by the contract and should not be determined by permitting an allowance of any and all items of expense which plaintiff may have incurred. However, it must be observed that the term "net profits" is found in the aforementioned supplementary agreement whereby plaintiff agreed to pay defendant a commission of 10 per cent of the "net profits of this crop". There is no reference to net profits in the main contract whereby defendant agreed to make certain advances and plaintiff agreed to pay a commission of 15 per cent "of the f. o. b. price El Centro". It is therefore apparent that the additional 10 per cent commission was to be calculated only on net profits. The trial court evidently construed the term "net profits" to mean whatever amount was left after all the various expenses incident to the growing of the lettuce crop and its marketing had been subtracted from the gross receipts. We entertain no doubt that this was a proper construction and that the court was justified from the evidence in allowing the item to which defendant objects.

■ The defendant further contends that the affirmative defense of accord and satisfaction was raised by the answer and that the evidence showed that this affirmative defense was sustained.

The evidence respecting this feature of the case showed that at the close of the season covered by the contract, the defendant submitted to plaintiff a final statement which showed that it was indebted to plaintiff in the sum of $547.69 and that there was attached to the statement a check for this amount drawn payable to plaintiff's order. The evidence also showed that plaintiff expressed to a third person his dissatisfaction with the amount for which the check was drawn and that the person to whom plaintiff voiced his dissatisfaction suggested that if plaintiff cashed the check it would amount

to a settlement of the account. The plaintiff then stated that he was in pressing need of the money and did not wish to delay cashing the check until he could discuss the matter with the defendant. The check which bore on its face the words "To balance accounts" was cashed by plaintiff prior to the time he notified defendant of his dissatisfaction but it appeared that plaintiff consulted an attorney a few days after the check was cashed and the attorney addressed a letter to defendant explaining plaintiff's dissatisfaction with the amount paid him and calling attention to certain specific items for which plaintiff claimed he should have received credit.

It is our conclusion that the trial court's finding that there was not an accord and satisfaction between the parties is supported by the evidence and that defendant's objection thereto is not sustainable. The evidence showed that the defendant was the exclusive agent of plaintiff to pack, ship and market plaintiff's lettuce. A different rule is therefore applicable to the situation than would apply if the relationship between the parties had been that merely of debtor and creditor. (*Egan* v. *Crowther*, 74 Cal. App. 674 [241 Pac. 900].) By its final statement defendant conceded that the money represented by the check belonged to plaintiff. When, therefore, plaintiff cashed the check and received the money he received nothing more than he was entitled to receive by defendant's express admission. Plaintiff was not obligated to return his own money to defendant under penalty of thereby acknowledging that he was not entitled to any additional amount.

■ Plaintiff attempts to raise an objection to the judgment in that the court refused to include therein an additional allowance which plaintiff claimed he was entitled to recover. This he may not do. He has taken no appeal and is interested only in maintaining the judgment. (*Byxbee* v. *Dewey*, 128 Cal. 322, 324 [60 Pac. 847]; *Rapp* v. *Southern Service Co.*, 116 Cal. App. 699, 708 [4 Pac. (2d) 195].)

The judgment is therefore affirmed.

Barnard, P. J., and Marks, J., concurred.