[Civ. No. 13462.   First Dist., Div. Two.   May 28, 1948.]

D. E. SANFORD COMPANY OF SAN FRANCISCO (a Co-partnership) et al., Appellants, v. CORY GLASS COF-FEE BREWER CO. (a Copartnership) et al., Respond-ents.

A. Don Duncan and Seaman & Jackson for Appellants.

Philip S. Ehrlich, Bartley C. Crum, Albert A. Axelrod, and R. J. Hecht for Respondents.

GOODELL, J.—The plaintiffs sued for $15,762.49 claimed to be owing for commissions, both earned and prospective, under a sales agency contract alleged to have been wrongfully terminated, also for an accounting as to unascertained commissions, and for declaratory relief. The answer denies the wrongful termination and pleads an accord and satisfaction. On the filing of the answer defendants moved for a summary judgment, which was granted. Judgment was entered in favor of defendants for their costs, and this appeal was taken.

The motion, under section 437c, Code of Civil Procedure, was made "on the ground that plaintiffs' action has no merit, in that prior to the filing of the complaint. . . there was an accord and satisfaction between the plaintiffs and defendants."

■ In passing upon a motion for summary judgment "the primary duty of the trial court is to decide whether there is an issue of fact to be tried. If it finds one, it is then powerless to proceed further, but must allow such issue to be tried by a jury unless a jury trial is waived . . . issue finding rather than issue determination is the pivot upon which the summary judgment law turns [citations.]" (*Walsh* v. *Walsh*, 18 Cal.2d 439, 441 [116 P.2d 62]. See, also, *Eagle etc. Co.* v. *Prentice*, 19 Cal.2d 553, 556 [122 P.2d 264] where some of the reasons for the rule are given.

The only question, then, which has to be decided herein is whether there is any issue of fact in the case.

■ The complaint sets forth in some detail the antecedents of the organizations of the respective parties and the various changes in their personnel and control. It is sufficient, however, to say that from 1933 to the middle of 1945, plaintiffs acted as exclusive selling agents of the products of defendants and their predecessors, in California, Nevada, Oregon, Washington and the Hawaiian Islands under an oral contract, which relationship apparently had been profitable and satisfactory to both sides. Defendants brought this to a sudden end by their letter to plaintiffs of April 27, 1945, reading in part as follows: "we therefore give you this notice that on and after June 1st of this year, all Hawaiian business will be handled by our Export Department, and on any shipments made up to that date, you will be protected with your usual sales commission. After this date, no further commissions will be paid to you on any Hawaiian business."

This was followed by defendants' letter of May 12, reading in part as follows: "We have already notified Fred of the termination of your representation in the Hawaiian territory. We are hereby notifying you that as to the balance of the territory represented by you, you may consider this letter as a termination of such representation, to take effect immediately. However, nevertheless, we will pay to your company your usual sales commission on all shipments made into your territory up to June 30, 1945."

On June 16, defendants wrote plaintiffs: "Enclosed please find our check . . . in the amount of $1782.25 being the commissions in full due you covering shipments made to your territory during the month of May, 1945 in accordance with our letters to you dated April 27th and May 12th, 1945 in which we terminated your representation. In accordance

with said letters of termination, we will send you in July, 1945, a final check to cover the shipments made by us to your territory during the month of June, 1945 which will be in full of all obligations due and owing to you.''

Plaintiffs on June 22, answered as follows: ''This will acknowledge your letter of the 16th with accompanying check. We are glad to accept this check and will also be glad to receive the check you mention that will be forthcoming during July for shipments made in June. We cannot, however, consider these checks, in any way, to fulfil all your obligations due us. We are endeavoring to ascertain the regularity of your cancellation of our contract. Also, we note that no mention has been made by you regarding payment of commissions on orders taken by us for post-war delivery. In due time you will be advised of our position in the matter.''

On July 19, defendants wrote plaintiffs: ''Enclosed please find our check . . . in the sum of $1383.39 to cover all shipments of our merchandise made to your territory in the month of June, 1945. In accordance with our letters of termination dated April 27th and May 12th, 1945, this constitutes a final settlement.''

The plea of accord and satisfaction is based on these letters and on the cashing of the checks in the face of what the letters say. The trial judge held that ''The letter of plaintiff dated June 22, 1945, raises a dispute between the parties'' and that an accord and satisfaction was established as a matter of law.

In determining whether there is a triable issue of fact the pleadings of course must be examined, together with the affidavits for which section 437c provides.

An important question in the case is whether the agency relationship which started back in 1933 on a year-to-year basis continued on such basis up to the time of the cancellation in 1945, or whether at the time of the break it was terminable on 30 days' notice. Two items included in the demand, one of $1,001.91 and one of $8,634.12, are for estimated commissions which it is claimed (based on plaintiffs' past record of sales) would have been earned had the agency been permitted to run to the end of 1945 instead of being cut off at June 30 by the 30-day notices. It is as to these prospective profits that the accounting is sought.

On this question the complaint alleges that selling campaigns were planned and arranged between the parties on a calendar-year basis and that plaintiffs made their financial commitments

and their arrangements for rentals, salesmen, and traveling expenses on such annual basis; that this arrangement was renewed each year up to and including 1945. The answer denies this.

The affidavits on the defendants' side admit that from 1933 to 1942, this annual arrangement was in effect but state that in 1942 at a conference held in Chicago it was discontinued and plaintiffs agreed that thenceforth the distributorship would be subject to termination on 30 days' notice.

The affidavit on the plaintiffs' side flatly states that this annual arrangement was continued and renewed and was in effect all the way into 1945. Issue was definitely joined on this question.

Another question of importance concerns the agency for DEO stoves. The complaint alleges that by a letter of September 23, 1943, defendants instructed plaintiffs to launch a selling campaign and take orders for deliveries after the war for DEO stoves (electric warming plates), the manufacture of which had been suspended in 1942 because of the war, and that plaintiffs did put on such campaign and obtained and forwarded to defendants many such orders. The answer expressly admits this.

The importance of this question is shown by the fact that plaintiffs are claiming that they turned in orders for $36,971.69 of DEO stoves which were accepted by defendants, and on information and belief plaintiffs allege that defendants shipped and collected for all such shipments. A commission of $3,697.17 is claimed on this account.

The complaint then alleges that the letter of April 27, 1945, ended the DEO stove project, and attempted to confine plaintiffs' commissions to orders actually shipped up to May 31, 1945. The answer claims that such cancellation was in accordance with the contract, which contemplated that commissions would be paid only on shipments made and not on orders placed, and in their affidavits defendants state that plaintiffs have always been paid on that basis.

Plaintiffs' affidavit asserts not only their right to commissions for sales made during all of 1945 but "to commissions for the orders they took and sent to defendants for the said 'DEO stoves' at the express instance and request of defendants, which were for post-war delivery, all of which orders . . . had been shipped by defendants and of which orders the defendants had taken the benefit" and for which they had

collected. Issue was definitely joined on the DEO stove question.

Another important issue was presented by plaintiffs' claim for $2,429.29 unpaid commissions (apart from the DEO stove account, and over and above commissions admittedly paid) on sales made and orders taken which had been accepted by defendants, aggregating $24,292.97.

In addition to the three major issues just discussed, there were several minor ones namely (1) that raised by defendants' denial of the making of the original sales agency contract; (2) that raised by defendants' denial of an assignment of the contract to the present defendants, and (3) those raised by various denials of the legal form, composition and succession of the predecessors of both litigants.

■ Moreover, the plea of accord and satisfaction itself raised at least three triable issues of fact namely (1) Whether there was a dispute, (2) Whether there was a consideration, and (3) Whether there was an intention to reach an accord. At the threshold the inquiry arises whether there exists a bona fide dispute respecting an *amount* due. (See *Berger* v. *Lane*, 190 Cal. 443, 447, 452 [213 P. 45]; *Whepley Oil Co.* v. *Associated Oil Co.*, 6 Cal.App.2d 94, 112 [44 P.2d 670]; *Sharp* v. *Conti*, 57 Cal.App.2d 1007, 1009 [136 P.2d 99]). The trial judge held that "The letter of plaintiff dated June 22, 1945, raises a dispute between the parties." The record shows, however, that on June 22, there was no dispute as to any *amount*, although in that letter plaintiffs suggested in general terms that they had a potential cause of action based on wrongful cancellation and a claim for *unascertained commissions* on orders booked for post-war deliveries.

1. *Dispute:* in *Lapp-Gifford Co.* v. *Muscoy Water Co.*, 166 Cal. 25, 27 [134 P. 989], the court says: "Whether there was a dispute concerning the amount due and whether the tender was on condition that acceptance would be in full satisfaction, are primarily questions of facts for the trial court." Followed in *Berger* v. *Lane*, 190 Cal. 443, 452 [213 P. 45]; *Sierra etc. Co.* v. *Universal etc. Co.*, 197 Cal. 376, 387-8 [241 P. 76]; *B. & W. Engineering Co.* v. *Beam*, 23 Cal.App. 164, 171 [137 P. 624]; *Everhardy* v. *Union Finance Co.*, 115 Cal.App. 460, 465 [1 P.2d 1024], and *Biaggi* v. *Sawyer*, 75 Cal.App.2d 105, 114 [170 P.2d 678].

■ 2. *Consideration:* "An agreement of accord like any other contract, must be founded upon a sufficient consideration . . ." (1 Cal.Jur. p. 128) "upon a valid new con-

sideration." (*Shortell* v. *Evans-Ferguson Corp.*, 98 Cal.App. 650, 654 [277 P. 519]). Whether or not there is a sufficient consideration to support a contract is always a question of fact. (*Estate of Thomson*, 165 Cal. 290, 296 [131 P. 1045]; 6 Cal.Jur. p. 167). "The imposition of an accord and satisfaction on the creditor against his will" says Williston at volume 6 on Contracts (rev. ed.), page 5220, section 1856, citing *inter alia Egan* v. *Crowther*, 74 Cal.App. 674 [241 P. 900], "can be justified only where his taking the check would be tortious except on the assumption of a taking in full satisfaction."

As both checks in this case were sent to pay earned commissions which defendants in their letters of transmittal admitted were due and owing, it can scarcely. be claimed that the checks were for "something different from or less than that to which the person agreeing to accept is entitled" (Civ. Code, § 1521). In this connection a comparison of this case with *Egan* v. *Crowther*, 74 Cal.App. 674, 679 [241 P. 900] and *Swerdfeger* v. *United Acceptance Corp.*, 9 Cal.App.2d 590, 597 [50 P.2d 818] is interesting, both of them being cases where the check sent by the agent to his principal was admittedly due and owing. See, also, *Sharp* v. *Conti*, 57 Cal. App.2d 1007 [136 P.2d 99]; *Moore* v. *Bartholomae Corp.*, 69 Cal.App.2d 474, 478 [159 P.2d 436].

*3. The intention of the parties:* "The question whether an agreement amounts to an accord and satisfaction is . . . a question of the intention of the parties and is, therefore, a question of fact . . ." (*Everhardy* v. *Union Finance Co.*, 115 Cal.App. 460, 466 [1 P.2d 1024], quoting 1 Cal.Jur. p. 136-7.) See, also *Whepley Oil Co.* v. *Associated Oil Co., supra*; *Carpenter* v. *Pacific States etc. Co.*, 19 Cal.App.2d 263, 268 [64 P.2d 1102]; *Wallace* v. *Crawford*, 21 Cal.App.2d 394, 404-5 [69 P.2d 455]; and *Kinkle* v. *Fruit Growers Supply Co.*, 63 Cal.App.2d 102, 112 [146 P.2d 8]. Moreover, in the case at bar several letters were exchanged after the checks were cashed which show, according to plaintiffs' contention, that there was no intention to arrive at an accord. Plaintiffs were entitled to a deliberate interpretation of these letters in the light of all the facts and circumstances which the evidence at the trial might disclose.

On this appeal it is not our function (any more than it was the function of the trial court) to decide whether (1) there was a dispute, or (2) a sufficient consideration, or (3) an in-

tention to arrive at an accord, but simply to decide whether a triable issue of fact is raised by the pleadings.

█ Section 437c provides that the motion shall be granted "unless the other party [plaintiffs], by affidavit or affidavits shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact." It is settled that ". . . the affidavits of the moving party . . . should be strictly construed and those of his opponent liberally construed" and that for the purpose of the motion "the better rule is that the facts alleged in the affidavits of the party against whom the motion is made must be accepted as true . . ." (*Eagle etc. Co.* v. *Prentice,* 19 Cal.2d 553, 556 [122 P.2d 264]).

Applying those rules to the affidavits in this case there appear to be several triable issues of fact herein the presence of which called for a denial of the motion.

In view of our discussion of the major issues in this case it is not necessary to pass upon the question whether the fact that a declaratory judgment was sought, itself called for a denial of the motion.

We conclude by again quoting *Walsh* v. *Walsh,* 18 Cal.2d 439, 444 [116 P.2d 62] : "The summary judgment statute is drastic and its purpose is not to provide a substitute for existing methods in the trial of issues of fact."

The judgment is reversed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied June 26, 1948, and respondents' petition for a hearing by the Supreme Court was denied July 22, 1948. Traynor, J., voted for a hearing.