Robert R. STALIK, Appellant,

v.

UNITED STATES of America, Appellee.

No. 5533.

United States Court of Appeals Tenth Circuit.

Aug. 1, 1957.

Gus Rinehart, Oklahoma City, Okl. (Butler, Rinehart & Morrison, Wheeler, Parsons & Wheeler, Oklahoma City, Okl. were with him on the brief), for appellant.

Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Paul W. Cress, U. S. Atty., Oklahoma City, Okl. and Paul A. Sweeney, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for appellee.

Before BRATTON, Chief Judge, HUXMAN and MURRAH, United States Circuit Judges.

HUXMAN, Circuit Judge.

This was an action for damages for personal injuries under the Federal Tort Claims Act, 28 U.S.C.A. § 1346. Appellant, Robert R. Stalik, sued the United States, charging it with negligence in loading a truck belonging to the Seiver Supply Company, a corporation, with surplus war material purchased by Seiver, and alleging that he suffered personal injuries directly attributable to the negligent conduct of the Government's servants and employees. When plaintiff rested his case, the Court dismissed the action on the ground that there was no evidence tending to establish actionable negligence on the part of the Government which proximately caused or contributed to the cause of the accident and the resulting injuries suffered by appellant.

The basic facts concerning which there is no dispute are these. The United States, through its Agency, the Tinker Air Base near Oklahoma City, advertised for bids for certain surplus materials. The advertisement was in the usual form of an invitation for bids sent to prospective purchasers and listed the terms of the sale. The advertisement stated that the sale was in the nature of "as is, where is". That is, the Government sold the material as is, where is, and without warranty or representation of any kind; that the sale would be without recourse against the Government; that title to the property should pass to the successful bidder upon full payment of the purchase price; that delivery should be made at the designated location; and that the purchaser should remove the property at his own expense. Seiver purchased a considerable amount of merchandise listed as items 17, 20, 29, 60, 100, 109, 125, 126, 137, and 141. The items included in classifications 109, 137 and 141 were similar items and of comparatively light weight. The other items were all of a much heavier nature and with respect to them it was provided that they were to be sold "f.o.b. open truck."

Seiver began hauling the property it had purchased in an open truck to Shawnee, Oklahoma. The truck was a truck tractor type with a flat bed semi-trailer attached to it. When the truck first arrived at the salvage yard, the driver was given an identification badge and was shown where to go. When he got into line, he was given a number and awaited his turn. The Government maintained four loading crews in the yards. Each crew consisted of two men

with a mobile mechanical fork lift. With this they lifted heavy boxes of material onto the trucks. The driver of the truck remained on the truck and directed where the boxes were to be placed. The employee not engaged in operating the lift at times got onto the truck and he and the driver of the truck positioned the heavy boxes on the bed of the truck.

On the day in question, they were loading boxes of metal bins weighing from 150 to 450 pounds. Some of the boxes in which this material was contained were in a deteriorated and rotten condition. After these boxes were placed on the truck, the truck driver boomed down the load with chains, left the field, and drove onto the highway leading to Shawnee, Oklahoma. On this occasion it was a windy day. One of the boxes containing angle iron collapsed and a piece of angle iron approximately three feet in length was thrown from the truck just as appellant was passing the truck in his automobile. It crashed through the windshield, striking appellant in the head, and inflicting serious and permanent injuries upon him.

■ Since the only question is whether the Government was negligent in loading or assisting in loading these deteriorated and rotten boxes on a flat bed truck without side-boards, we lay aside any question of Seiver's negligence in failing to put on side-boards, which he had. The contract provided that the particular merchandise in question was sold "f.o.b. open truck". The phrase "f.o.b." means "free on board". The phrase is clear and unambiguous. It means just what it says and, when standing alone, as it does in this contract, is not subject to judicial construction. In Vogt v. Shienebeck, 122 Wis. 491, 100 N.W. 820, 822, 67 L.R.A. 756, the Court said: "* * * a sale [of] f.o.b. cars means that the subject of the

sale is to be placed on cars for shipment without any expense or act on the part of the buyer." And "All of such authorities declare that a sale 'f.o.b. cars' so plainly indicates that the seller, without expense to the buyer, is to deliver the subject of the sale on cars ready to be taken out by the carrier that the term is not open to construction. Some hold that evidence is admissible to show that the letters 'f.o.b.' as used in mercantile contracts stands for the words 'free on board'; but, generally speaking, it is held that the courts will take judicial notice that such is the meaning, and that the import of the words is too plain to call for or permit judicial construction."[1]

■ The driver of the truck was under no duty to load or procure the loading of the material on the truck. That, under the contract, was the duty of the vendor, the Government. It apparently recognized this duty because it had in attendance at the yard four crews with mechanical equipment to load these heavy boxes of material. When a truck driver arrived, he was given a number, got in line, and when it was time for his truck to be loaded, he found a crew of Government employees with a mechanical loader ready to load the truck. Under the facts of the record, the driver would not have been permitted to load the truck himself. The fact that he directed the crew where to deposit a box after they had raised it up with the loader, or even assisted them in positioning the heavy boxes which could not be handled by one person did not change the relationship of the parties. The Government by its employees and with its mechanical equipment was discharging its duty to deliver this material free on board the truck.

■ Neither does the loaned servant rule have application to this case. That principle is well established and recognized where the facts make it applic-

1. See also 1 Bouv.Law Dict., Rawles Third Revision, p. 1310; Harman v. Washington Fuel Co., 228 Ill. 298, 81 N.E. 1017; Hatcher v. Ferguson, 33 Idaho 639, 198 P. 680, 16 A.L.R. 590; Silberman v. Clark, 96 N.Y. 522; Muskegon Curtain-Roll Co. v. Keystone Mfg. Co., 135 Pa. 132, 19 A. 1008; Swerdfeger v. United Acceptance Corp., 9 Cal.App.2d 590, 50 P.2d 818.

able. : But the mere fact that an employee is sent to do certain work pointed out to him by the person who has made an arrangement with his general employer, standing alone, does not make him the person's servant.[2] The members of this crew were rendering a service primarily for the Government in the discharge of its obligation under the contract to deliver the salvage material on board the truck. Under these facts, the loaned servant doctrine has no application.

■■ It is without dispute that this heavy material was loaded in a haphazard and unsafe manner. It was loaded on this flat bed truck, in deteriorated rotten boxes, which when battened down was unsafe and liable to collapse, as this one box did, and scatter dangerous material along the highway. In fact, the court found that it could be reasonably anticipated from the manner in which this truck was loaded that what did happen might happen. The Government knew that this material would be transported along the public highway in this unsafe and dangerous manner. It participated in bringing about these conditions. It owed a duty to the public using the highway to so load this material that it could be safely transported along the highway. That duty did not cease when title to the property had passed to the purchaser and it had left the Government's premises, nor was the Government relieved from its duty to the public by the fact that Seiver also was negligent in not using side-boards. The uncontradicted evidence adduced by plaintiffs makes a prima facie case of negligence against the Government in loading or participating in the loading of this material in such a negligent manner. This liability to third persons continued even though Seiver was transporting the material along the highway at the time of the accident and the resulting injury.

 Appellee's contention that the use of the words "as is, where is" in the conditions of the sale contract support its theory that the Government assumed no obligation to load the truck is not well taken. The use of the words "as is" in such transactions have without exception been interpreted as a limitation on the warranty of the goods by the seller,[3] and the term "where is" simply notes the place where the transaction is to be consummated. It means no more than that the Government will not remove the goods to some other point for delivery to the purchasers.

Reversed and remanded.

---

2. Kelley v. Summers, 10 Cir., 210 F.2d 665; Hodges v. Holding, Okl.1951, 229 P.2d 555; City of Tulsa v. Randall, 174 Okl. 630, 52 P.2d 33.

3. Standard Magnesium Corporation v. United States, 10 Cir., 1957, 241 F.2d 677; United States v. Silverton, 1 Cir., 1952, 200 F.2d 824; American Elastics v. United States, 2 Cir., 1951, 187 F.2d 109.