**ALFRED HOFMANN AND COMPANY**
v.
**The UNITED STATES.**
No. 86–62.

United States Court of Claims.
March 13, 1964.

Warren Roberts, Wilmington, Del., for plaintiff. Llewellyn A. Luce, Washington, D. C., was on the brief.

John Charles Ranney, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant. Hugh R. Kincaid, U.S. Dept. of Justice, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE, and DAVIS, Judges.

JONES, Chief Judge.

This is a suit to recover the drayage or truck charges, in the amount of $27,-834.42, incurred by plaintiff in delivering certain practice bombs sold by it to the Navy Department of the United States. The case is before us on defendant's motion for summary judgment.

Plaintiff operated one plant in West New York, New Jersey, and another near Murfreesboro, Tennessee. On April 22, 1957, pursuant to competitive bidding, plaintiff was awarded a fixed price supply contract, which called for the manufacture of 600,000 twenty-five-pound practice bombs as a total price of $2,724,000. Plaintiff's Bid for the contract, dated February 8, 1957, contained the following provisions:

"DELIVERY

"Supplies shall be delivered f. o. b. carrier's equipment, wharf, or freight station (at the Government's option) at or near contractor's work at MURFREESBORO TENN. as follows:

\*   \*   \*   \*   \*   \*

"Bidder shall insert in the above blank space the f. o. b. point."

In the original Invitation for Bid received by plaintiff, there was a blank space in the Delivery paragraph where the words "MURFREESBORO TENN." now appear. These words were inserted in the space under the direction of plaintiff's president. The Invitation for Bid and the Bid were incorporated into the contract by the terms of the award.

The Delivery clause in the award differed in language from that contained in the Bid:

"Deliveries: Supplies shall be delivered f. o. b. carrier's equipment, wharf, or freight station (at the Government's option) at or near

Contractor's plant, Murfreesboro, Tenn. * * * "

The bombs were manufactured, assembled and delivered from plaintiff's Tennessee plant. Physically, the plant was located about 5 miles outside of Murfreesboro. No railroad serviced this plant at the plant premises. However, there was a railroad siding or team track about 1.5 miles from the plant, at Florence, Tennessee. In addition, there was a freight station in Murfreesboro, at about 7.5 miles from the plant.

The Government's bill of lading required rail shipment. Plaintiff disputed the right of the Government to this requirement and contended that it understood the contract to call for delivery of the bombs at its plant. Under protest, plaintiff trucked the bombs from its plant to the railroad siding or team track at Florence and loaded them aboard freight cars, where the Government accepted them. This team track at Florence was the nearest rail facility to plaintiff's plant. In trucking these bombs from its plant to the railroad siding at Florence, plaintiff incurred drayage charges in the sum of $27,834.42 which is the subject of the present controversy.

Thereafter, plaintiff made claim for reimbursement, to the contracting officer, for the drayage charges incurred by plaintiff at the Government's request, which plaintiff contended was not a requirement under the contract. It was the plaintiff's contention that delivery under the contract need only be made by plaintiff at its plant, and not anywhere outside of the plant premises. The contracting officer denied plaintiff's claim. Plaintiff then made a timely appeal to the Navy Panel of the Armed Services Board of Contract Appeals (hereinafter referred to as the ASBCA) and was accorded a hearing. In an opinion dated March 31, 1961, the ASBCA denied plaintiff's appeal. Subsequently, on March 21, 1962, plaintiff filed its petition in this court.

As support for its motion for summary judgment, the Government points to the Delivery paragraph in plaintiff's Bid which provided that delivery shall be f. o. b. at Murfreesboro, Tennessee. It is the Government's contention that the words "MURFREESBORO TENN.", which were inserted into the Bid by plaintiff, indicated the f. o. b. point. Since plaintiff was required by the contract to deliver the bombs f. o. b. at the freight station in Murfreesboro, located at about 7.5 miles from plaintiff's plant, according to the Government, plaintiff cannot complain when the Government allowed plaintiff to realize a substantial saving by taking delivery at Florence, which was only about 1.5 miles from the plant. Alternatively, the Government contends that even if the words "MURFREESBORO TENN." were only descriptive of the location of plaintiff's plant and not intended to be the f. o. b. point, the contract itself provided that delivery shall be "f. o. b. carrier's equipment, wharf, or freight station (at the Government's option) at or near Contractor's plant," and that the ASBCA correctly found that the rail facilities both at Florence and Murfreesboro were "near" plaintiff's plant.

Plaintiff has pleaded that it understood the contract to mean, and to provide for, delivery of the bombs at plaintiff's plant. Plaintiff's contention is that the phrase "at MURFREESBORO TENN." in the Bid was simply descriptive of the general area where the "contractor's work" was located. The Delivery clause in the contract itself, plaintiff suggests, shows this contention to be correct. There, designation of the delivery point is "at or near Contractor's plant, Murfreesboro, Tenn." Furthermore, plaintiff says the term "at or near" should be construed by this court to mean "at," and not "near."

Looking at the contract as a whole, we believe that defendant's position is correct. There is no dispute between the parties as to the meaning of f. o. b., which are the initial letters of "free on board," indicating that the freight is to be loaded by the seller for shipment by the carrier without any expense or act on the part of the buyer. Stalik v. United States, 247 F.2d 136

(10th Cir. 1957). In its Bid, plaintiff was required to show the f. o. b. point; which requirement plaintiff complied by inserting the words "MURFREESBORO TENN." in the appropriate place. After it has contracted to make delivery in Murfreesboro, plaintiff cannot now complain when the Government allowed it to do less by taking delivery at a point only one-fifth as far away. There is no substantial merit in plaintiff's contention that the words "MURFREESBORO TENN." were merely descriptive of the general location of plaintiff's plant. If plaintiff intended to make the f. o. b. point at its plant near Murfreesboro, it could have filled in the blank space accordingly. Instead, in the space reserved for the f. o. b. point, plaintiff inserted the words "MURFREESBORO TENN." We think that the the instruction contained in the Invitation for Bid was clear and unambiguous. It is too late in the day for anyone to claim that his subjective intent in making the contract was different from the provisions of the written contract.

■■ Furthermore, in the contract the delivery point was designated as "at or near" contractor's plant. We see no basis for construing this phrase to mean "at." [1] Certainly the Delivery clause does not lend support to plaintiff's contention. The Delivery clause provided that "Supplies shall be delivered f. o. b. carrier's equipment, * * *." Normally, under a contract for the sale of personalty providing for delivery "f. o. b." point of manufacture, the property is to be delivered to the carrier and placed on cars for shipment to the point of destination without cost to the purchaser. See 77 C.J.S. Sales § 165 and the authorities cited therein. Thus viewing f. o. b.

contracts generally, we conclude that the present contract called for delivery f. o. b. carrier's equipment but with the Government's option restricted to an election of a freight station, or a wharf, which is near the contractor's plant. There is no reason to restrict the meaning of the phrase "at or near" to that of "at." The phrase means what it says, namely, at or near.

■■ Whether one place is "near" another must be determined in each case by a consideration of the circumstances in that case. Thus, the Supreme Court held in Kirkbride v. Lafayette Co., 108 U.S. 208, 2 S.Ct. 501, 27 L.Ed. 705 (1883), that a railroad 9 miles from the township of Lexington was near to the township. More recently, the District Court in Evans Electrical Const. Co. v. Wm. S. Lozier, Inc., 68 F.Supp. 256 (W. D.Mo.1946), found that a contract obligation "to 'establish and maintain an office at or near the site of the work'" was met by an office 35 miles from the project site. Under the facts and circumstances of the present case, we believe that the railroad facilities both at Florence and Murfreesboro were "near" plaintiff's plant within the terms of the contract.

In its brief, plaintiff argues that it relied on the definition of the term "at or near" given by the General Services Administration as meaning "at." Plaintiff cites General Services Administration, Standard Form 36, November 1949 Edition, as the source of the above definition. Defendant disputes this contention and denies that such definition is contained in said Standard Form 36. However, whatever the contents of the Standard Form 36, they are not part of the con-

---

1. In this regard, we note the comment of the ASBCA, recorded in footnote 6 of its opinion dated March 31, 1961:

"The words 'at and near' are used in the disjunctive in this clause. We are a little perplexed by Appellant's argument here. As we understand it, Appellant starts with the proposition that 'at' and 'near' are synonymous—'at' being an elastic word, takes on the meaning of 'near.' It is in the next step that our perplexity arises. Appellant continues saying in effect, since 'at' means 'near' then 'near' means 'at,' and there is neither freight station nor rail facilities 'at' Appellant's plant. Therefore, delivery 'at' the plant can be made to truck only. It follows, then that the Government's requirement for rail delivery is in excess of the contract requirements and the cost of transportation to the freight station shall be at Government expense."

tract here in suit and so not pertinent. The alleged definition is irrelevant to the issues in this case.

Plaintiff cites Fruit Growers Express Co. v. Plate Ice Co., 59 F.2d 605 (4th Cir. 1932), with lengthy quotations taken therefrom, as support for its argument that the decision of the ASBCA was erroneous as a matter of law, but plaintiff does not tell us why the Fruit Growers case is pertinent to the issues in the present case. In Fruit Growers, the express company contracted with the ice company to buy from it all the ice the express company might require for a period of 5 years. The paragraphs of the contract pertaining to the place of delivery of the ice were quoted by the court:

"1. The Car Line shall direct to be iced or re-iced such cars as its business hereunder may require to be iced or re-iced at Wilmington, N. C., and the Ice Company shall ice or re-ice such cars promptly as directed by the Car Line. * * * "

"3. It is mutually agreed that such ice is sold to be delivered by the Ice Company in the bunkers of refrigerator cars at Wilmington, N. C., as directed by the Car Line at the following prices. * * * "2

The ice company had a railroad siding at its ice plant in Wilmington, N. C., and for the first 3 years delivery was made at the ice plant. Subsequently, the express company directed the ice company to ice all cars at a railroad yard about 1 mile distant from the ice plant. After the ice company denied the right of the express company to shift the point of delivery within the city of Wilmington, the express company treated this refusal to change the point of delivery as a breach and terminated the contract. The ice company then sued the express company for breach of contract for refusal to take further ice. The express company contended that the words "as directed," in the delivery paragraphs of the contract, signified the right to designate the place of delivery. The court disagreed, saying:

"* * * The words 'as directed,' in paragraphs 1 and 3, are given full force and effect by making them apply to the identity and number of the cars to be iced, and the time when the work is required to be done. * * * "3

The facts in Fruit Growers make that case completely inapposite to the instant case. The ice company did not deny that it had to deliver the ice within Wilmington, the city named in the contract. The court there merely said that the contract did not specify any particular place of delivery in the city of Wilmington. In the present case, the place of delivery in the city of Murfreesboro, Tennessee, was specified to be at a wharf or freight station (at the Government's option).

Both parties devoted considerable time and effort, in their briefs and during oral argument, to the question of finality of the decision of the ASBCA in this case. Plaintiff contends that the decision of the ASBCA was not final because at issue here is a question of law in construing a contract which is beyond the jurisdiction of the ASBCA to render a final decision. In this connection plaintiff cites the Wunderlich Act[4] and several opinions of this court.[5] On the other hand, defendant contends that plaintiff's claim herein is one normally cognizable under the Changes and Disputes article of the contract as a claim for equitable adjustment. As support, defendant points to the provision in the instant contract em-

2. 59 F.2d at 607.

3. Id. 59 F.2d at 608.

4. The Wunderlich Act, 68 Stat. 81, 41 U. S.C. §§ 321–322, provides in part:
   "Sec. 2. No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board."

5. United Foundation Corporation v. United States, 126 Ct.Cl. 567 (1953) ; Blackburn v. United States, 126 Ct.Cl. 874, 116 F.Supp. 584 (1953) ; Johnson Contracting Corp. v. United States, 132 Ct.Cl. 645, 119 F.Supp. 788 (1955).

powering the contracting officer to make changes within the general scope of the contract, in " * * * (ii) method of shipment or packing; and (iii) place of delivery," and provides for an equitable adjustment in the contract price if such changes cause an increase in cost. However, since we agree with the conclusions reached by the ASBCA, there is no need for us to pass upon this issue of finality of the decision of the ASBCA in the instant case.

The defendant's motion for summary judgment is granted and plaintiff's petition is dismissed.